**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **CENTURY SURETY COMPANY** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| **V.** | § | **CASE NUMBER: 4:23-cv-3156** |
| | § | |
| | § | |
| **RELOAD TRANSPORT INC.,** | § | |
| **STATE NATIONAL INSURANCE** | § | |
| **COMPANY, DZ INDUSTRIES, INC.** | § | |
| **D/B/A HOME ELEVATOR OF TEXAS,** | § | |
| **AND ANGELA HERNANDEZ AND** | § | |
| **ALEXANDRA ROWLAND,** | § | |
| **INDVIDUALLY AND AS** | § | |
| **REPRESENTATIVES OF THE ESTATE** | § | |
| **OF JAN SCOTT ROWLAND** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF CENTURY SURETY COMPANY'S COMPLAINT
FOR DECLARATORY JUDGMENT**

**NOW COMES** Plaintiff, Century Surety Company ("Century"), by and through its
attorneys, Jonathan K. Barger, John I. Goodwin, and Butler Weihmuller Katz Craig LLP, and for
its Complaint for Declaratory Judgment ("Complaint") against Reload Transport Inc., State
National Insurance Company, DZ Industries, Inc. d/b/a Home Elevator of Texas, and Angela
Hernandez and Alexandra Rowland, individually and as representatives of the Estate of Jan Scott
Rowland (collectively "Defendants"), states as follows:

**STATEMENT OF THE CASE**

1.      This action seeks a declaration that Century owes no insurance coverage
obligations to the Defendants in connection with the lawsuit styled *Angela Hernandez and
Alexandra Rowland, individually and as representatives of the Estate of Jan Scott Rowland v. DZ*

Industries, Inc. d/b/a Home Elevator of Texas and Reload Transport Inc., Cause No. 2023-01969, in the 11th District Court of Harris County, Texas ("Underlying Suit").  A copy of the *Plaintiffs' First Amended Original Petition* filed in the Underlying Suit ("Underlying Petition") is attached hereto as **Exhibit A.**

## THE PARTIES

2.       Plaintiff, Century, is incorporated and domiciled in Ohio and its principal place of business is in Michigan. Thus, pursuant to 28 U.S.C. Section 1332 (c) (1), for purposes of diversity jurisdiction, Century is a citizen of Ohio and Michigan.

3.       Defendant Reload Transport Inc. ("Reload") is incorporated in Illinois and its principal place of business is in Illinois. Thus, pursuant to 28 U.S.C. Section 1332 (c) (1), for purposes of diversity jurisdiction, Reload is a citizen of Illinois. Reload was a named insured of Century on the date of the accident that is the basis for the Underlying Suit.

4.       Defendant State National Insurance Company ("State National") is an insurance company organized under the laws of Texas with its principal place of business in Texas. Thus, pursuant to 28 U.S.C. Section 1332 (c) (1), for purposes of diversity jurisdiction, State National is a citizen of Texas. State National is a necessary party to this action as it has an interest in the outcome of this action.

5.       Defendant DZ Industries, Inc. d/b/a Home Elevator of Texas ("DZ") is incorporated in Texas and its principal place of business is in Texas. Thus, pursuant to 28 U.S.C. Section 1332 (c) (1), for purposes of diversity jurisdiction, DZ is a citizen of Texas. DZ is a necessary party to this action as it has an interest in the outcome of this action.

6.       Defendant Angela Hernandez, individually and as representative of the Estate of Jan Scott Rowland, ("Ms. Hernandez"), is an individual who resides in Texas and is a citizen of Texas.

She is the legal representative of the Estate of Jan Scott Rowland. Jan Scott Rowland ("Jan Scott Rowland" or "Mr. Rowland") is a decedent who resided in Texas at the time of his death. Thus, pursuant to 28 U.S.C. Section 1332 (a) and (c) (2), for purposes of diversity jurisdiction, Ms. Hernandez is a citizen of Texas. Ms. Hernandez is a necessary party to this action as she has an interest in the outcome of this action.

7.      Defendant Alexandra Rowland, individually and as representative of the Estate of Jan Scott Rowland ("Ms. Rowland"), is an individual who resides in Texas and is a citizen of Texas. She is the legal representative of the Estate of Jan Scott Rowland. Mr. Rowland is a decedent who resided in Texas at the time of his death. Thus, pursuant to 28 U.S.C. Section 1332 (a) and (c) (2), for purposes of diversity jurisdiction, Ms. Rowland is a citizen of Texas. Ms. Rowland is a necessary party to this action as she has an interest in the outcome of this action.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. Section 1332 (a) (1), as the amount in controversy exceeds $75,000, exclusive of interest and costs, and this action is between citizens of different states. More specifically, the Underlying Petition seeks damages from Century's named insured, Reload, and from DZ, for allegedly causing the wrongful death of Jan Scott Rowland, which damages, if proven, would exceed $75,000, exclusive of interest and costs. *See* **Exhibit A**, Underlying Petition. There is complete diversity of citizenship between the Plaintiff and the Defendants because Century is a citizen of Ohio and Michigan, Defendant Reload is a citizen of Illinois, and Defendants DZ, Ms. Hernandez, and Ms. Rowland are citizens of Texas.

9.      Venue is proper in this District pursuant to 28 U.S.C. Section 1391 (b) (2) because the incident in the Underlying Suit that gives rise to the claims against Reload and

Century occurred in Houston, Texas. Thus, a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## THE POLICIES

**Century's Policy**

10.    Century issued Commercial Lines Policy No. CCP 1038111 to the Named Insured, Reload, for the policy period of January 27, 2022 to January 27, 2023 ("Century's Policy"), a copy of which is attached hereto as **Exhibit B.** Century's Policy provides to Reload, among other types of insurance, Commercial General Liability ("CGL") insurance with limits of $1 million each occurrence and a General Aggregate Limit other than Products-completed Operations) of  $2 million, subject to a $500 per claim deductible for bodily injury and property damage liability combined and subject to all of the terms, exclusions, limitations, and conditions of Century's Policy.

11.    Century's Policy incorporates a *Commercial General Liability Coverage Form*, CG 00 01 04 13 ("CGL Form"). The Insuring Agreement in the CGL Form ("Century's Insuring Agreement") states in relevant part:

**SECTION I – COVERAGES**

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

　　**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III — Limits Of Insurance; and**

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments — Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period;

**Exhibit B**, Century's Policy, CGL Form, p.1.

12.      The CGL Form in Century's Policy contains **Exclusion 2.a. Expected or Intended Injury** ("Expected Injury Exclusion"). The Expected Injury Exclusion states in relevant part:

**2.  Exclusions**

This insurance does not apply to:

**a.  Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**Exhibit B**, Century's Policy, CGL Form, p.2.

13.      Century's Policy contains an endorsement entitled *Exclusion – Aircraft, Auto or Watercraft*, CGL 1793 1019 ("Auto Exclusion Endorsement") which replaces the **Exclusion g. Aircraft, Auto or Watercraft** in the CGL Form with a revised **Exclusion g. Aircraft, Auto or**

**Watercraft** ("Auto Exclusion"). The Auto Exclusion Endorsement and the Auto Exclusion therein states in relevant part:

### EXCLUSION - AIRCRAFT, AUTO OR WATERCRAFT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Section I - Coverages. Coverage **A -** Bodily Injury or Property Damage Liability, paragraph **2.,** Exclusions, subparagraph **g.,** Aircraft. Auto or Watercraft, is deleted in its entirety and replaced with the following sub-paragraph.

This insurance does not apply to:

**g**. **Aircraft, Auto Or Watercraft**

  **(1)** "Bodily injury" or "property damage" arising out of:

    **(a)** Ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft; or

    **(b)** Liability of any insured for the acts of another, whether or not statutorily imposed, that arise from the actions of any entity's use of an aircraft, "auto" or watercraft.

    Use includes operation and "loading or unloading".

  **(2)** This exclusion applies even if the claim alleges negligence or other wrongdoing in the supervision, hiring. employment, training or monitoring of others by any insured, or any other entity working on behalf of any insured if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership. maintenance. use or entrustment to others of any aircraft, "auto" or watercraft.

  **(3)** This exclusion does not apply to:

    **(a)** A watercraft while ashore on premises you own or rent; or

    **(b)** "Bodily injury" or "property damage" arising out of:

      **i.** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or

> financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or
>
> **ii.** The operation of any of the machinery or equipment listed in paragraph **f. (2)** or **f. (3)** of the definition of "mobile equipment".

**Exhibit B**, Century's Policy, Auto Exclusion.

14.     Century's Policy contains a *Special Exclusions and Limitations Endorsement*, CGL 1701 0917 ("Special Endorsement"), which adds **Exclusion 5. Punitive, Exemplary, Treble Damages or Multipliers of Attorneys' Fees** ("Punitive Damages Exclusion") to Coverages A and B of the CGL Coverage Part in Century's Policy. The Punitive Damages Exclusion states:

> This insurance does not apply to:
>
> \*\*\*
>
> **5. Punitive, Exemplary, Treble Damages or Multipliers of Attorneys' Fees**
>
> Claims or demands for payment of punitive, exemplary or treble damages whether arising from the acts of any insured or by anyone else for whom or which any insured or additional insured is legally liable; including any multiplier of attorney's fees statutorily awarded to the prevailing party.

**Exhibit B**, Century's Policy, Special Endorsement, p.1.

15.     The Special Endorsement also sets forth a condition regarding "other insurance" ("Century's Other Insurance Condition"). Century's Other Insurance Condition states:

> **D. It is agreed that SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS is changed as follows:**
>
> **1. Item 4., Other Insurance is deleted and entirely replaced by the following:**

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a.** This insurance is excess over any other insurance whether the other insurance is stated to be primary, pro rata, contributory, excess, contingent, umbrella, or on any other basis; unless the other insurance is issued to the named insured shown in the Declarations of this Coverage Part and is written explicitly to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**b.** When this insurance is excess, we will have no duty under Coverage **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**c.** When this insurance is excess over other insurance, we will pay only our share of the amount of loss, if any. that exceeds the sum of:
   **(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and
   **(2)** The total of all deductible and self-insured amounts under all that other insurance.

**Exhibit B**, Century's Policy, Special Endorsement, p. 3.

16.    Century's Policy defines the following relevant terms:

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**\*\*\***

**11. "Loading or unloading"** means the handling of property:

    **a.**  After it is moved from the place where it is accepted for movement into or onto an aircraft. watercraft or "auto";

    **b.**  While it is in or on an aircraft, watercraft or "auto": or

    **c.**  While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device. other than a hand truck, that is not attached to the aircraft. watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:
    **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**\*\*\***

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13. "Occurrence"** means an accident. including continuous or repeated exposure to substantially the same general harmful conditions. All "bodily injury" or "property damage" arising out of an "occurrence" or series of related "occurrences" is deemed to take place at the time of the first such damage or injury even though the nature and extent of such damage or injury may change; and even though the damage may be continuous, progressive, cumulative. changing or evolving: and even though the "occurrence" causing such "bodily injury" or "property damage" may be continuous or repeated exposure to substantially the same general harmful conditions.

**Exhibit B**, Century's Policy, CGL Form, pp. 13, 14, and 15; Special Endorsement, p. 5.

**State National's Policy**

    17.   State National issued Policy Number GWP85016 00 to the Named Insured, Reload, for the policy period of January 27, 2022 to January 27, 2023 ("State National's Policy"), a copy of which is attached hereto as **Exhibit C**. State National's

Policy provides Commercial Auto coverage to Reload. with a Covered Autos Liability limit of $1 million and no liability deductible.

18.      State National's Policy incorporates a *Motor Carrier Coverage Form*, CA 00 20 10 13 ("Motor Form"). The Motor Form states in relevant part:

### SECTION II - COVERED AUTOS LIABILITY COVERAGE

### A.  Coverage

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

***

We will have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

**Exhibit C**, State National's Policy, Motor Form, pp. 2-3.

19.      The Motor Form in State National's Policy contains the following other insurance condition ("State National's Other Insurance Condition"):

### 5.  Other Insurance — Primary And Excess Insurance Provisions

**a.**   While any covered "auto" is hired or borrowed from you by another "motor carrier", this Coverage Form's Covered Autos Liability Coverage is:

**(1)** Primary if a written agreement between you as the lessor and the other "motor carrier" as the lessee requires you to hold the lessee harmless.

**(2)** Excess over any other collectible insurance if a written agreement between you as the lessor and the other "motor carrier" as the lessee does not require you to hold the lessee harmless.

**b.** While any covered "auto" is hired or borrowed by you from another "motor carrier", this Coverage Form's Covered Autos Liability Coverage is:

    **(1)** Primary if a written agreement between the other "motor carrier" as the lessor and you as the lessee does not require the lessor to hold you harmless, and then only while the covered "auto" is used exclusively in your business as a "motor carrier" for hire.

    **(2)** Excess over any other collectible insurance if a written agreement between the other "motor carrier" as the lessor and you as the lessee requires the lessor to hold you harmless.

**c.** While a covered "auto" which is a "trailer" is connected to a power unit, this Coverage Form's Covered Autos Liability Coverage is:

    **(1)** Provided on the same basis, either primary or excess, as the Covered Autos Liability Coverage provided for the power unit if the power unit is a covered "auto".

    **(2)** Excess if the power unit is not a covered "auto".

**d.** Any Trailer Interchange Coverage provided by this Coverage Form is primary for any covered "auto".

**e.** Except as provided in Paragraphs **a., b., c.** and **d.** above, this Coverage Form provides primary insurance for any covered "auto" you own and excess insurance for any covered "auto" you don't own.

**Exhibit C**, State National's Policy, Motor Form, p.11.

20.     State National's Policy contains a *Form MCS-90* endorsement ("MCS-90 Form")

which states in relevant part:

> It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for

any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

**Exhibit C**, State National's Policy, MCS-90 Form, p.2

## THE UNDERLYING SUIT

21.    On January 11, 2023, Defendants Ms. Hernandez and Ms. Rowland (collectively "Underlying Plaintiffs"), the daughters of the decedent, Jan Scott Rowland, initiated the Underlying Suit by filing *Plaintiffs' Original Petition* against DZ for the alleged wrongful death of Mr. Rowland in the 11th District Court for Harris County, Texas.

22.    On February 13, 2023, Underlying Plaintiffs filed the Underlying Petition, which is *Plaintiffs' First Amended Original Petition* and the current, applicable Petition in the Underlying Suit. *See* **Exhibit A**, Underlying Petition.

23.    The Underlyng Petition names both Reload and DZ as the defendants in the Underlying Suit. *See* **Exhibit A**, Underlying Petition, pp. 1-2, ¶¶ 3-4.

24.    The Underlying Petition alleges that, on or about September 26, 2022, Jan Scott Rowland was performing his job with DZ. Pursuant to the instructions given to him that day, and/or discussions with Reload's driver, Miladin Knezevic, Mr. Rowland was using a forklift to unload a heavy piece of equipment, a home elevator out of the back of Reload's enclosed tractor-trailer. *See* **Exhibit A**, Underlying Petition, p.3, ¶ 12.

25.    According to the Underlying Petition, because DZ did not possess a loading dock capable of allowing the equipment to be accessed directly by a forklift, and because DZ apparently did not possess or supply a mobile ramp or yard ramp, the equipment had to be unloaded in the parking lot of DZ's Houston offices. *See* **Exhibit A**, Underlying Petition, pp. 3-4, ¶ 13.

26.     The Underlying Petition asserts that Reload Transport delivered the equipment in a truck that did not possess a ramp or a rear lift, despite knowing that DZ Industries' Houston office did not possess a loading dock. *See* **Exhibit A**, Underlying Petition, p.4, ¶ 14.

27.     The Underlying Petition alleges that, consequently, Reload's employee went inside the truck to push the equipment to the open end of the trailer, while Mr. Rowland assisted by pulling the equipment with a chain attached to a forklift. After pulling the equipment to the back edge of the trailer, Mr. Rowland attempted to straighten the equipment pallet so that the forklift could lift it. As he was doing so, the Reload employee inside the truck pushed, shoved, and/or turned the equipment, causing it to tip out of the trailer and fall on top of Mr. Rowland, crushing him. *See* **Exhibit A**, Underlying Petition, p.4, ¶ 15.

28.     According to the Underlying Petition, as a result of this incident, Mr. Rowland suffered severe injuries that resulted in his immediate hospitalization and ultimately caused his death on October 5, 2022. *See* **Exhibit A**, Underlying Petition, p.4, ¶ 16.

29.     The Underlying Petition asserts that at the time of the incident in question, the Reload driver, Knezevic, was acting in the scope and course of his employment as an employee, borrowed employee, agent, and representative for Reload. *See* **Exhibit A**, Underlying Petition, p.4, ¶ 17.

30.     The Underlying Petition alleges that Reload and DZ committed acts and omissions of negligence and gross negligence which caused the death of Mr. Rowland and resulted in damages to the Underlying Plaintiffs. **Exhibit A**, Underlying Petition, pp. 4-7, ¶¶ 19-32. The Underlying Petition alleges causes of action against Reload and DZ for negligence, gross negligence, a survival action, and a wrongful death action. **Exhibit A**, Underlying Petition, pp. 4-8, ¶¶ 19-39.

31.     The Underlying Petition seeks actual damages, punitive damages, pre-judgment interest, post-judgment interest, and court costs from Reload and DZ. *See* **Exhibit A**, Underlying Petition, p. 10.

32.     State National has been defending Reload from the Underlying Suit pursuant to State National's Policy and at State National's sole expense.

33.     Despite this, Reload has requested that Century defend and indemnify Reload from the Underlying Suit at Century's expense.

34.     Century denies that the allegations in the Underlying Petition require Century to defend Reload from the Underlying Suit. Additionally, Century denies that it has a duty to indemnify Reload from the Underlying Suit.

35.     An actual and justiciable controversy exists between Century, on the one hand, and Reload and the other Defendants, on the other hand, as to the availability of insurance coverage for the Underlying Suit. Accordingly, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C Section 2201, this Court is vested with the power to declare the rights and liabilities of the Parties hereto and to give such other and further relief that may be necessary.

## COUNT I

### Because Century's Policy is Excess, Century has No Duty to Defend Reload and Century has No Duty to Indemnify Reload until and unless State National pays its limit and Reload Pays Its Deductible to Satisfy a Settlement or a Judgment for a Covered Loss

36.     Century incorporates and restates the allegations of Paragraphs 1 through 35 above as if fully set forth herein.

37.     State National's Other Insurance Condition in the Motor Form in State National's Policy states in relevant part that "Except as provided in Paragraphs **a., b., c.** and **d.** above, this

Coverage Form provides primary insurance for any covered 'auto' you own and excess insurance for any covered "auto" you don't own." **Exhibit C**, State National's Policy, Motor Form, p.11.

38.     On information and belief, Paragraphs a, b, c, and d of State National's Other Insurance Condition do not apply because: (1) the tractor-trailer that Reload's driver was allegedly operating at the time of Mr. Rowland's death was not hired or borrowed from Reload by another motor carrier; (2) the tractor-trailer that Reload's driver was allegedly operating at the time of Mr. Rowland's death was not borrowed by Reload from another motor carrier; (3) the tractor was a "covered auto"; and (4) the Trailer Interchange Coverage is property coverage not applicable to a claim for "bodily injury."

39.     On information and belief, at the time Mr. Rowland was killed, the tractor-trailer from which the equipment that killed Mr. Rowland was allegedly being unloaded was a "covered 'auto' you [Reload] own". Thus, under the plain language of State National's Other Insurance Condition, State National's Policy provides primary insurance coverage to Reload for the Underlying Suit.

40.     Century's Other Insurance Condition states in relevant part:

> **4.  Other Insurance**
>
> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:
>
> This insurance is excess over any other insurance whether the other insurance is stated to be primary, pro rata, contributory, excess, contingent, umbrella, or on any other basis; unless the other insurance is issued to the named insured shown in the Declarations of this Coverage Part and is written explicitly to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**Exhibit B**, Century's Policy, Special Endorsement, p. 3.

41.     The insuring agreement in **Section II. A** of the Motor Form in State National's Policy ("State National's Insuring Agreement") states in relevant part "We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury'…to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'." **Exhibit C**, State National's Policy, Motor Form, p.2. The allegations in the Underlying Petition are covered by State National's Insuring Agreement because the Underlying Petition seeks 'sums", monetary damages, that State National's insured, Reload, "legally must  pay  as damages", actual and punitive damages alleged in the Underlying Petition, "because of 'bodily injury'", the death of Mr. Rowland, "caused by an 'accident'", the equipment falling on Mr. Rowland, "and resulting from the ownership…or use of a covered 'auto'", the ownership and use of Reload's tractor-trailer.  *See* **Exhibit A**, Underlying Petition, pp. 3-8. Therefore, State National's Policy is "other valid and collectible insurance [which] is available to the insured" as that phrase is used in Century's Other Insurance Condition.

42.     There is no language in State National's Policy indicating it is "written explicitly to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part [Century's CGL Coverage Part]." Accordingly, as  State National's Policy is "other valid and collectible insurance available to the insured" and is not "written explicitly to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part [Century's CGL Coverage Part]", if the Underlying Suit were a "loss we [Century] cover under Coverages **A** or **B** of this Coverage Part", which Century denies, then under the plain language of State National's Other Insurance Condition and Century's Other Insurance Condition, State National's Policy is primary coverage and Century's Policy is excess coverage for the Underlying Suit.

43.     If the Underlying Suit were a "loss we [Century] cover under Coverages **A** or **B** of this Coverage Part", which Century denies, then under Illinois law, which applies to State National's Policy and Century's Policy, State National's Other Insurance Condition and Century's Other Insurance Condition do not conflict, can be reconciled with each other, and thus make State National's Policy primary and Century's Policy excess with respect to the Underlying Suit.

44.     Century denies that the Underlying Suit is "a loss we [Century] cover under Coverages **A** or **B** of this Coverage Part."  However, if the Underlying Suit were "a loss we [Century] cover under Coverages **A** or **B** of this Coverage Part", then under the plain language of State National's Other Insurance Condition and Century's Other Insurance Condition and Illinois law, State National's Policy would provide primary coverage to Reload for the Underlying Suit and Century's Policy would provide excess coverage for the Underlying Suit.

45.     Because the allegations of the Underlying Petition are covered under State National's Insuring Agreement, under Illinois law, State National has a duty to defend Reload from the Underlying Suit under State National's Policy. State National has acknowledged that it has a duty to defend Reload from the Underlyng Suit by defending Reload from the Underlying Suit at State National's sole expense.

46.     Section **4.b.** of Century's Other Insurance Condition states in relevant part "When this insurance is excess, we will have no duty under Coverage **A** or **B** to defend the insured against any 'suit' if any other insurer has a duty to defend the insured against that 'suit'."  **Exhibit B**, Century's Policy, Special Endorsement, p. 3. Accordingly, even if the Underlying Suit is "a loss we [Century] cover under Coverages **A** or **B** of this Coverage

Part", which Century denies, because State National has a duty to defend Reload from the Underlying Suit, Century has no duty to defend Reload from the Underlying Suit

47.     Section **4.c.** of Century's Other Insurance Condition states "**c.** When this insurance is excess over other insurance, we will pay only our share of the amount of loss, if any, that exceeds the sum of: **(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and **(2)** The total of all deductible and self-insured amounts under all that other insurance." **Exhibit B**, Century's Policy, Special Endorsement, p. 3. State National's Policy has a limit of $1 million for Covered Autos Liability. **Exhibit C**, State National's Policy, *Motor Carrier Declarations,* p. 3. Century's Policy has a $500 deductible for bodily injury claims. **Exhibit B**, Century's Policy, CGL Declarations, p.1 There are no self-insured amounts other than the deductible under Century's Policy. Thus, if Underlying Plaintiffs were to reach a settlement with or obtain a judgment against Reload in the Underlying Suit, then Century would have no duty under Century's Policy to indemnify Reload for any portion of such a settlement or judgment: (1) unless the settlement or judgment were for "a loss we [Century] cover under Coverages **A** or **B** of this Coverage Part", which Century denies; (2) unless the settlement or judgment exceeded $1,000,500; and (3) unless and until State National paid its policy limit of $1 million and Reload paid its deductible of $500 to satisfy all or part of the settlement or judgment.

WHEREFORE, Plaintiff, Century, prays that this Court enter the following relief:

A. A declaration finding that Century owes no duty to defend Reload from the Underlying Suit because State National's Policy is primary and Century's Policy is excess;

B. A declaration finding that Century has no duty to indemnify Reload for any portion of a settlement with or a judgment obtained against Reload in the Underlying Suit: (1) unless the settlement or judgment were "a loss we [Century] cover under Coverages **A** or **B** of this Coverage Part", which Century denies; (2) unless the settlement or judgment exceeds $1,000,500; and (3) unless and until State National pays its policy limit of $1 million and Reload pays its deductible of $500 to satisfy all or part of the settlement or judgment.

C. For all such just and equitable relief, including costs of this suit.

## COUNT II

### The Auto Exclusion Excludes Coverage for the Underlying Suit

48.     Century incorporates and restates the allegations of Paragraphs 1 through 47 above as if fully set forth herein.

49.     Century's Policy contains an Auto Exclusion. The Auto Exclusion states in relevant part "This insurance does not apply to: **(1)** 'Bodily injury'…arising out of: **(a)** Ownership, maintenance, use or entrustment to others of any … "auto" or… **(b)** Liability of any insured for the acts of another, whether or not statutorily imposed, that arise from the actions of any entity's use of an … 'auto' … Use includes operation and "loading or unloading". The Auto Exclusion states that it applies "even if the claim alleges negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by any insured…if the 'occurrence' which caused the 'bodily injury'… involved the ownership, maintenance, use or entrustment to others of any… 'auto'…." "Auto" is defined, in relevant part, as "A land motor vehicle, trailer or semitrailer designed for travel on public roads" or "Any other land vehicle that

is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged."

50.     In the Underlying Petition, Underlying Plaintiffs allege that their father, Mr. Rowland, was killed while he was unloading equipment from Reload's tractor-trailer. *See* **Exhibit A,** Underlying Petition, pp. 3-4, ¶¶ 12-16.  Accordingly, because the Underlying Petition alleges "bodily injury", the death of Mr. Rowland, "arising out of: …ownership… [and] use… of any…'auto'", Reload's ownership and use of its tractor-trailer at the time Mr. Rowland was killed, and because none of the exceptions to the Auto Exclusion apply, the Auto Exclusion in Century's Policy bars coverage for the Underlying Lawsuit

WHEREFORE, Plaintiff, Century, prays that this Court enter the following relief:

A. A declaration finding that Century owes no duty to defend Reload from the Underlying Suit because the Auto Exclusion in Century's Policy excludes coverage;

B. A declaration finding that Century owes no duty to indemnify Reload from the Underlying Suit because the Auto Exclusion in Century's Policy excludes coverage;

C. For all such just and equitable relief, including costs of this suit.

### <u>COUNT III</u>

### <u>The Allegations of Gross Negligence and Punitive and/or Exemplary Damages are Not a Covered "Occurrence" and/or are Excluded from Coverage under the Expected or Intended Injury Exclusion</u>

51.     Century incorporates and restates the allegations of Paragraphs 1 through 50 above as if fully set forth herein.

52.     The Insuring Agreement in **Section I. A. 1. b (1)** of the CGL Form in Century's Policy ("Century's Insuring Agreement") states in relevant part that "This insurance applies to 'bodily injury'…only if: **(1)** The 'bodily injury'…is caused by an 'occurrence'."   **Exhibit B,**

Century's Policy, CGL Form, p.1. The CGL Form in Century's Policy defines "occurrence" in relevant part as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  **Exhibit B,** Century's Policy, Special Endorsement, p.5.

53.     Additionally, the CGL Form in Century's Policy contains **Exclusion 2.a. Expected or Intended Injury** ("Expected Injury Exclusion"). The Expected Injury Exclusion states in relevant part "This insurance does not apply to:…'Bodily injury'…expected or intended from the standpoint of the insured." **Exhibit B,** Century's Policy, CGL Form, p.2.

54.     The Underlyng Petition alleges under the cause of action for gross negligence that "the above acts and omissions on the part of Defendants' [sic] taken singularly or in combination, constitute gross negligence as that term is defined and used in Texas, and were the proximate cause of Mr. Rowland's injuries and death…Defendants had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety, and welfare of Mr. Rowland and others." **Exhibit A,** Underlying Petition, p.7, ¶¶ 30 and 31. The Underlying Petition further alleges that "Because Defendants are liable for gross negligence, punitive and/or exemplary damages should be assessed against it [them] in an amount to be determined by the jury as a deterrent for future bad conduct and as a punishment for Defendant's [sic] bad acts and omissions." **Exhibit A,** Underlying Petition, p.7, ¶ 32.

55.     The Underlying Petition's allegations that "Defendants had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety, and welfare of Mr. Rowland and others" are allegations that Reload acted intentionally and/or knowingly. Such intentional and/or knowing conduct is not an "accident" and thus is not an "occurrence" under Century's Policy. Thus, Reload's allegations of gross negligence are not allegations of "'bodily injury'…caused by an 'occurrence'." Therefore, the allegations of gross negligence and

that Plaintiffs in the Underlying Suit are entitled to punitive and/or exemplary damages from Reload because of its alleged gross negligence are not covered under Century's Policy. Accordingly, Century has no duty to indemnify Reload for its alleged gross negligence and the resulting damages, including punitive and/or exemplary damages.

56.     Additionally and/or alternatively, the Underlying Petition's allegations that "Defendants had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety, and welfare of Mr. Rowland and others", which are allegations that Reload acted intentionally and/or knowingly, and the allegations that Plaintiffs in the Underlying Suit are entitled to punitive and/or exemplary damages from Reload because of its alleged gross negligence, are excluded by the Expected Acts Exclusion, because they are allegations of " 'bodily injury'….expected or intended from the standpoint of the insured." Accordingly, Century has no duty to indemnify Reload for its alleged gross negligence and the resulting damages, including punitive and/or exemplary damages.

WHEREFORE, Plaintiff, Century, prays that this Court enter the following relief:

A.  A declaration finding that Century owes no duty to indemnify Reload from the allegations in the Underlying Suit of gross negligence and damages, including punitive and/or exemplary damages, resulting from Reload's alleged gross negligence because such allegations are not "'bodily injury' "caused by an 'occurrence'" and/or are excluded from coverage by the Expected Injury Exclusion in Century's Policy; and

B.  For all such just and equitable relief, including costs of this suit.

### COUNT IV

### The Allegations of Punitive and/or Exemplary Damages are Excluded
### from Coverage under the Punitive Damages Exclusion

57.     Century incorporates and restates the allegations of Paragraphs 1 through 56 above as if fully set forth herein.

58.     The Underlying Petition alleges that "Because Defendants are liable for gross negligence, punitive and/or exemplary damages should be assessed against it [them] in an amount to be determined by the jury as a deterrent for future bad conduct and as a punishment for Defendant's [sic] bad acts and omissions." **Exhibit A,** Underlying Petition, p.7, ¶ 32. The Punitive Damages Exclusion in the Special Endorsement in Century's Policy states in relevant part "This insurance does not apply to:…Claims or demands for payment of punitive, exemplary or treble damages whether arising from the acts of any insured or by anyone else for whom or which any insured is legally liable…". **Exhibit B**, Century's Policy, Special Endorsement, p.1.  Thus, the Punitive Damages Exclusion excludes coverage for the allegations and demand for punitive and/or exemplary damages against Reload in the Underlying Petition. Therefore, Century has no duty to indemnify Reload for the Underlying Petition's allegations of, and demand for, punitive and/or exemplary damages against Reload.

WHEREFORE, Plaintiff, Century, prays that this Court enter the following relief:

A. A declaration finding that Century owes no duty to indemnify Reload from the Underlying Petition's allegations of, and request for, punitive and/or exemplary damages against Reload; and

B. For all such just and equitable relief, including costs of this suit.

## <u>PRAYER FOR RELIEF</u>

Plaintiff Century Surety Company respectfully requests that the Court enter a judgment in Century's favor and against Defendants:

(1) declaring that Century's Policy provides no policy benefits for the claims against Reload in the Underlying Suit for the reasons set forth in this Complaint;

(2) declaring that Century has no duty to defend Reload from or in connection with the Underlying Suit or any other lawsuit filed in connection with the incident that is the basis of the Underlying Suit for the reasons set forth in this Complaint;

(3) declaring that Century has no duty to indemnify Reload from any settlement or judgment in connection with the Underlying Suit or any other lawsuit filed in connection with the incident that is the basis of the Underlying Suit for the reasons set forth in this Complaint; and

(4) awarding Century its attorneys' fees and costs and all other just and proper relief to which it may be entitled.

Respectfully submitted,

**BUTLER WEIHMULLER KATZ CRAIG LLP**

By:    */s/John I. Goodwin*
        Jonathan K. Barger
        Attorney-In-Charge
        Texas State Bar No. 24127700
        S.D. Texas Bar No. 3810202
        18383 Preston Road, Suite 400
        Dallas, TX 75252
        Direct: (469) 621-0690
        Office: (469) 857-7870
        Telefacsimile: (214) 812-9226
        jbarger@butler.legal
        John I. Goodwin
        Texas State Bar No.: 24054012
        S.D. Texas Bar No. 866570
        18383 Preston Road, Suite 400
        Dallas, TX 75252
        Direct: (469) 857-7872
        Office: (469) 857-7870
        Telefacsimile: (214) 812-9226
        jgoodwin@butler.legal

        **ATTORNEYS FOR PLAINTIFF,
        CENTURY SURETY COMPANY**